Jack Russo (Cal. Bar No. 96068)
Christopher Sargent (Cal. Bar No. 246285)
COMPUTERLAW GROUP LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800 office
(650) 618-1863 fax
jrusso@computerlaw.com
csargent@computerlaw.com

Attorneys for Defendants
DR. GARY BRADSKI AND DR. ADRIAN KAEHLER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAGIC LEAP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GARY BRADSKI, an individual, ADRIAN KAEHLER, an individual, ROBOTICS ACTUAL, INC., a Delaware corporation, and OPENCV.AI, a Delaware corporation,<br><br>Defendants. | Case No. 5:16-cv-02852-NC<br><br>**DEFENDANT DR. ADRIAN KAEHLER AND DR. GARY BRADSKI'S DISCOVERY LETTER BRIEF**<br><br>**[RE: ECF NO. 142]**<br><br>**Date:** TBD<br>**Time:** TBD<br>**Courtroom:** 7, 4th Floor. |

I. **U**NDER **R**ULE 1 AND **R**ULE 26, THE **N**EW **P**ROPORTIONALITY **P**RINCIPLES **C**ONTROL **P**ROCEEDINGS AND **E**NSURE **A**NY **E**ARLY **D**ISCOVERY IS **N**ARROW AND **R**EASONABLE.

After agreeing to "**Mutual** Discovery of Emails" including "requests from Defendants for specific information needed in advance of the settlement conference," [ECF No. 84],[1] Plaintiff took advantage of the discussion before this Court regarding what might be appropriate document production prior to a settlement conference. Plaintiff has demanded overly broad searches of ESI that initially resulted in hundreds of thousands of responses and was, after weeks of effort and substantial cost in expert work, "narrowed" to over 16,000 electronic records to be produced on an expedited basis. This burden on two, unemployed individuals is neither called for nor appropriate. Further, Plaintiff failed to provide any meaningful trade secret identification,[2] despite the fact that many of the searches it requested directly pertain to its purported trade secret claims. Thus, Defendants respectfully request the Court to clarify its order that documents be produced mutually and reasonably such that no documents have to be produced unless and until (1) Plaintiff issues a proper trade secret identification, (2) narrows its requests to a reasonable set of terms that minimizes the burden on these two individual defendants, and (3) on a mutual basis and without the unilateral approach demanded by Magic Leap and its counsel.

Since the initial hearing before this Court, the Defendants took gross advantage of the Court's statement that certain production of documents may be appropriate. First, after agreeing to mutuality and a general stay, Plaintiff began by asking for a huge number of search terms covering all aspects of their claims and many issues wholly unrelated to this case that led to hundreds of thousands of results from searches done by Moving Defendants' expert. Goodnough Declaration ("Goodnough Decl."), ¶¶2−4, 10, Exs. A−B. Second, Plaintiff engaged in a lengthy meet and confer process, that included reported delays in timing over any trade secret identification, and consumed dozens of hours of time from the Defendants, from counsel and

---

[1] Defendants have turned over to the Mediator and are today turning over to Magic Leap—even though reciprocity has not occurred—the emails that mention "Robotics Actual." In turn they request Magic Leap turn over all emails which mention "robotics" or "robots" or "machine learning" — what must have been intended by the "Mutual Discovery of Emails" targeted at making the mediation meaningful and before major discovery starts in this case!

[2] What is provided is a generic listing of over 150 concepts which, if each were put into Google, would produce thousands of public domain items.

**Computerlaw Group LLP**
www.computerlawgroup.com[sm]

1  from Defendants' expert. Goodnough Decl., ¶¶4−5, 7, 10, 14. <u>Third</u>, at the conclusion, the
2  narrowest search Plaintiff would agree to resulted in over 16,000 electronic documents to be
3  reviewed and produced over a period of days. Goodnough Decl., ¶15 and with no mutuality at all
4  from Magic Leap. Why did Magic Leap agree to a "Mutual Discovery of Emails" if it had no
5  intent to even begin to perform? We do not know even the general results of the search requests.

6  At this point of a supposed "trade secret case" and four months after filing the case, we
7  still have no TRO request, no preliminary injunction request, no agreement to any expedited trial
8  and no real identification of required trade secrets has been made before discovery. Can they
9  really expect anyone to believe that anything other than a fishing expedition is in process here? A
10 real Rule 1 as provided requires, "*parties to secure the just, speedy, and inexpensive*
11 *determination of every action and proceeding*." [Emphasis added.] The identification of trade
12 secrets is a prerequisite to discovery. "Such identification assures adequate notice of the nature
13 of the misappropriation claim; and prevents plaintiff tailoring its misappropriation claim around
14 information obtained through discovery." Wagstaffe, Cal. Prac. Guide Fed. Civ. Pro. Before
15 Trial, Calif. & 9th Cir. Editions, Ch. 11(III)-C, §11:1111.5 (The Rutter Group 2016).

16 Moving Defendants worked diligently and at great cost in time and money to attempt to
17 move discovery and dispute resolution processes and have been met with highly burdensome
18 demands and wholly inadequate disclosures. This one-sided abuse of the discovery process should
19 end. Given that the agreed discovery flow specifies "Mutual Discovery of Emails," the unilateral
20 approach is simply unacceptable. And framing it as "needed for mediation" is also unacceptable as
21 every fishing expedition could be so justified and that is not applicable federal prosecution.

## **CONCLUSION**

23 Fairness requires mutuality, proper trade secret identification, and a fair discovery
24 process. the Court's prior order with respect to production of emails embraces "Mutual
25 Discovery of Emails" so that no documents have to be produced unless and until (1) Mutuality of
26 production occurs; (2) Plaintiff issues a proper trade secret identification, and (3) narrows its
27 requests to a reasonable set of terms that minimizes the burden on these two individual
28 defendants. The search terms requested by Defendants were and are far from narrower.

Dated: September 30, 2016

Respectfully submitted,
COMPUTERLAW GROUP LLP

By: *Jack Russo*
Jack Russo
Christopher Sargent

Attorneys for Defendants
DR. GARY BRADSKI AND DR. ADRIAN KAEHLER